IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAZMIN J. SANTOS SERRANO and her husband EDGARDO ROSADO MARTIN, personally and on behalf of their conjugal partnership<br><br>Plaintiffs<br><br>vs.<br><br>EQUIPO GINECOLOGICO Y OBSTETRICO DE SALUD, PSC or alternatively, JOHN DOE CORPORATION d/b/a EQUIPO GINECOLOGICO Y OBSTETRICO DE SALUD, PSC; DR. ROBERTO GARCIA RAMIS and his wife JANE DOE, personally and on behalf of their conjugal partnership; DR. HECTOR L. SANCHEZ RIVERA and his wife DOROTHY DOE, personally and on behalf of their conjugal partnership; JOHN DOES 1, 2 and 3; CORPORATIONS A, B and C; UNKNOWN INSURANCE COMPANIES A through D<br><br>Defendants | CIVIL NO.: 14-<br><br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW plaintiffs Jazmín J. Santos Serrano and Edgardo Rosado Martín, through their undersigned counsel, and very respectfully state and pray as follows:

### Jurisdiction, Venue and Parties

1. The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2. Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4. Jazmín J. Santos Serrano ("Mrs. Santos") and her husband Edgardo Rosado Martín ("Mr. Rosado") are citizens and residents of 978 Florida Parkway, Kissimmee, Florida 34743.

5. Defendant Equipo Ginecológico y Obstétrico de Salud, PSC, or alternatively, John Doe Corporation d/b/a Equipo Ginecológico y Obstétrico de Salud PSC (hereinafter "EGOS") is a corporation organized under the laws of the Commonwealth which has its principal place of business in Puerto Rico. EGOS is the owner and/or operator of a medical facility of the same name located at Hospital HIMA San Pablo Caguas in Caguas, Puerto Rico.

6. Defendant Doctor Roberto García Ramis ("Dr. García") is a medical doctor, specializing in obstetrics and gynecology, married to codefendant Jane Doe and together with her constituting a conjugal partnership, who intervened in the prenatal care of Mrs. Santos. Dr. García and his wife are domiciled in Puerto Rico where they reside.

7. Defendant Doctor Héctor L. Sánchez Rivera ("Dr. Sánchez") is a medical doctor, specializing in obstetrics and gynecology, married to codefendant Dorothy Doe and together with her constituting a conjugal partnership, who intervened in the prenatal care of Mrs. Santos. Dr. Sánchez and his wife are domiciled in Puerto Rico where they reside.

8. All of the other defendants are citizens and residents of the Commonwealth of Puerto Rico or states and territories other than the state of Florida,

John Does 1, 2 and 3 and Corporations A, B and C are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

9.  Unknown Insurance Companies A through D, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

## Factual Allegations

10. Plaintiff Jazmín Santos Serrano became pregnant on or about the month of August, 2011.  Mrs. Santos received prenatal care at EGOS medical facility at Hospital HIMA San Pablo Caguas, in Caguas, Puerto Rico.

11. On November 14, 2011 Mrs. Santos at 36 years of age had her first prenatal visit with Dr. Sánchez, at EGOS.  During said visit Mrs. Santos was described by Dr. Sánchez as being 5 feet tall, weighing 186 pounds, at 15 4/7 weeks of gestation, with a blood pulse of 117/59.

12. On December 5, 2011 Mrs. Serrano had her second prenatal visit at EGOS and was described as being at 18 weeks gestation, 194 pounds and with a blood pulse of 101/57.

13. On December 27, 2011 an obstetrical ultrasound was performed on Mrs. Serrano.  It revealed a fetus at 21 week gestation with an estimated fetal weight of 455 gms, at the 73rd percentile and the amniotic fluid index was 13.8 cm.  The report also visualized the head, brain, face, spine, neck, skin, chest, abdominal wall, kidneys, bladder, extremities and skeleton, all normal in appearance.

14. On January 26, 2012 Mrs. Santos visited EGOS for her third prenatal visit, at 26 weeks of gestation, weighing 205 pounds and with a blood pulse of 101/59. Her fundal height was not measured.

15. On February 13, 2012 a urinalysis that was performed on Mrs. Serrano showed a result of 21 (glycosuria).

16. According to the EGOS medical records, on March 9, 2012 Mrs. Santos had her fifth prenatal visit, at 32 6/7 weeks gestation, with a fundus height of 35, weighing 213 pounds, with a blood pulse of 124/89.

17. A sonogram performed during Mrs. Santos' fifth visit showed a fetus with an estimated fetal weight of 2755 gms (95th percentile), amniotic fluid index 15.1cm, Biophysical profile 8/8, and the maternal fetal consultation noted.

18. On March 23, 2012 Mrs. Santos again visited EGOS for a prenatal visit, where her fundus height was not measured, her weight was established at 218 pounds, with a blood pressure of 112/60.

19. According to Mrs. Santos' medical record at EGOS, on April 2, 1012 Mrs. Santos was at 34 weeks gestation, once again her fundus height was not measured, weight 227 pounds, with a 3+ glycosuria in accordance with a urine analysis test.

20. On April 25, 2012 Mrs. Santos had her last prenatal visit at EGOS at 38 weeks gestation, weight 230 pounds, and fetal death was recognized. After this prenatal visit Mrs. Santos was admitted to Hospital HIMA Caguas with a diagnosis of intrauterine fetal death. The estimated fetal weight, according to the notes of Dr. García was 7 pounds.

21.   On that same date Dr. García performed a Cesarean section, delivering a 13 pound dead baby boy.  The baby was macrosomic and cyanotic.  [Attached as Exhibit I of this complaint are pictures of baby Rosado Serrano upon delivery at HIMA Caguas.]

22.   On April 27, 2012 a placenta pathology revealed the following:

    1.   710 gm placenta;

    2.   Acute intervillous infarcts occupying 30% of the placental surface;

    3.   Subchorionic hemotoma;

    4.   Hemorrhagic endovasculitis.

23.   On May 5, 2012 an autopsy was performed on baby boy Rosado Serrano, which revealed a macrosomic fetus without congenital abnormalities. Pathologist Dr. Yocasta Brugal opined that the fetus baby Rosado had died as a result of a metabolic derangement that caused diminished fetal-maternal exchange.

24.   During her prenatal course at EGOS Mrs. Santos' body mass index increased from 36.44 on November 14, 2011 to 45 on April 23, 2012.  In accordance with the medical literature a body mass index exceeding 30 indicates serious obesity. The medical literature establishes that for obese woman with a body mass greater than 29 the maximum recommended weight gain during pregnancy is 15 pounds.  Mrs. Santos was negligently allowed by EGOS' personnel, including Dr. García and Dr. Sánchez, a weight gain of 44 pounds, an average of 2 pounds per week.

25.   There were clear signs throughout Mrs. Santos' prenatal care indicating the presence of gestational diabetes, such as a macrosomic fetus, obese mother, late third trimester fetal death, elevated hemoglobin A1C, excessive maternal weight gain

and 3+ glycosuria noted on April 2, 2012.

26. The medical literature establishes that, for women with gestational diabetes, fetal surveillance should be performed as follows:

    a. Biophysical profile once a week;

    b. Non-stress test twice a week;

    c. Estimation of fetal weight by ultrasound at 36 weeks gestation.

The purpose of weekly surveillance in diabetes mellitus is to prevent sudden fetal death near term.

27. Careful analysis of the facts and events of this case reveals that EGOS' personnel, including Dr. Sánchez and Dr. García, were practicing below the standard of care in the treatment provided to Mrs. Jazmín Santos Serrano. Defendants' departures from the medical standards and/or professional negligence include, but are not limited to: failure to recognize that Mrs. Jazmín Santos was displaying signs compatible with gestational diabetes; failure to perform a routine one hour glucose screening test between 24 and 28 weeks gestation; failure to measure Mrs. Santos fundus height during her prenatal course; not placing Mrs. Santos on a dietary regimen; failure to recognize the presence of uncontrolled maternal diabetes; failure to control the diabetes utilizing hospitalization, diet, insulin, daily glucometer testing, (fasting and two hours after each meal) to identify glucose values; failure to perform weekly biophysical profiles and non-stress tests to evaluate fetal-placental health states; and failure to deliver the baby Rosario before damage or death occurred to the fetus.

28. Jazmín Santos Serrano and her husband Edgardo Rosado Martín have suffered severe emotional damages as a consequence of defendants' negligence and

their baby's death. The life changing incidents described above have taken a heavy toll on this young family and their relationship.

29. The intrauterine death of their baby and the consequential physical and emotional damages suffered by Mrs. Santos and Mr. Rosado were caused by the negligent management of Mrs. Santos prenatal care. Defendants' departures from the medical standards of care and failure to act in a prudent reasonable or responsible manner in the medical care provided to Mrs. Santos, in fact caused the traumatic outcome outlined above.

30. Plaintiffs Jazmín Santos and Edgardo Rosado have individually suffered and will continue to suffer grave physical and emotional damages, and mental anguish due to the mismanagement of Mrs. Santos' prenatal care. Said damages are valued at a sum not less than $2,000,000 for Mrs. Santos and $1,500,000 for Mr. Rosado.

31. On April 23, 2013 plaintiffs through their previous legal representation, made an extrajudicial claim against defendants which interrupted the statute of limitations.

## COUNT I

### (Medical Malpractice, Vicarious Liability – 31 L.P.R.A. §5141; 5142)

32. Paragraphs 1 through 31 of this Complaint are incorporated by reference as if fully set forth herein.

33. EGOS, Dr. García, Dr. Sánchez and the John Doe Defendants had a duty to provide medical care to Mrs. Santos that complied with the applicable standards of the medical profession. Notwithstanding, EGOS, Dr. García, Dr. Sánchez and the John Doe Defendants breached that duty as set forth above.

34. EGOS is further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein that it employed, contracted with and/or granted privileges to, and by its medical staff that intervened with Mrs. Santos, for their negligence in the selection, monitoring, supervision and granting of privileges to said doctors, including Dr. García and Dr. Sánchez.

35. There is a clear and direct causal link between EGOS, Dr. García, Dr. Sánchez and the John Doe Defendants' medical malpractice and the damages sustained by plaintiffs, as set forth above.

## COUNT II

### (Direct Action Against Insurers – 26 L.P.R.A. § 2003)

36. Paragraphs 1 through 35 of this Complaint are incorporated by reference as if fully set forth herein.

37. Defendants Insurance Companies A through D have a contractual obligation to compensate those who are damaged by the medical errors and omissions of EGOS, Dr. García, Dr. Sánchez and/or the John Doe Defendants. As set forth in Count I, above, those defendants committed medical malpractice with respect to Mrs. Santos. Moreover, there is a clear and direct causal link between said misconduct and the damage sustained by plaintiffs, as set forth above.

38. Under 26 L.P.R.A. § 2003, plaintiffs have a right to reclaim directly against the corresponding insurers of EGOS, Dr. García, Dr. Sánchez and the John Doe Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that the court enter final judgment against defendants:

1. Declaring defendants to be in violation of 31 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. §2003, as alleged hereinabove.

2. Finding defendants jointly and severally liable to plaintiffs for the damages sustained by them, plus applicable interest and costs.

3. Awarding plaintiffs such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury in the complaint set forth above.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of March, 2014.

**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiffs*
PO Box 29314
San Juan, PR 00929-0314
Tel. 787-753-6455
Fax 787-758-5515
efron@davidefronlaw.com

By: _____
DAVID EFRON
USDC-PR 125701

9